UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

Bankruptcy No. 24-31355

Strategic Pork Solutions LLC,

Debtor.

## DEBTOR-IN-POSSESION'S MOTION FOR AUTHORITY TO LEASE LAND IN MARTIN COUNTY

NOW COMES, Strategic Pork Solutions LLC, the Debtor in the above-captioned case (the "Debtor"), and file this Motion to Lease Land in  Martin County, Minnesota, and in support of its motion respectfully states as follows:

1.     The Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code on May 23, 2024

2.     The Court will hold a hearing on this motion on <u>Wednesday, the 17th day of July, 2024</u>, at <u>10:00</u> o'clock a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 West, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3.     Any response to this motion must be filed and served by delivery not later than Wednesday, July 10, 2024, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays and holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. Sec. 157 and 1134, Bankruptcy Rule 5005 and Local Rule 1070-1.  This is a core proceeding.  The case is now pending in this Court.

5.     Pursuant to §541 of the United States Bankruptcy Code, the estate has come into

possession of a fee title interest in real property located in Martin County, Minnesota.  Said

property is legally described as follows:

## MARTIN COUNTY, MINNESOTA

1.      **Parcel No. 15.034.0650**

The North 180 feet of the East 292 feet of the Northeast Quarter (NE1/4) of Section
Thirty-four (34), Township One Hundred Two (102) North, Range Thirty-one (31) West,
Martin County, Minnesota.

Proofed with Document No. 450100; JDS & CY

Titleholder:   **Strategic Pork Solutions, LLC**

**SUBJECT TO Mortgage (Doc. No. 450101) w/ Security Bank Minnesota – $100,800**

**SUBJECT TO Mortgage (Doc. No. 458292) w/ Security Bank Minnesota – $182,000**

**SUBJECT TO Mortgage (Doc. No. 459848) w/ Security Bank Minnesota – $75,000**

1.21 acres    AG NON HSTD / MANURE PITS   2024 EMV $78,700

## BACKGROUND FACTS

6.      On May 23, 2024 (the "Petition Date"), the Debtor filed its voluntary petition for

relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the

"Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a

debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7.      An Official Committee of Unsecured Creditors ("Committee") has not been

appointed in this case and has not employed professionals on its behalf.

8.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1409. This is a core

proceeding within the meaning of  28 U.S.C. §§ 157(b)(2)(A) and (M).

9.      Prior to the Petition Date, Debtor rented the facilities owned by the Debtor. Rents

were paid to a secured creditor.

10.     Some of the facilities owned by the Debtor are all located in Martin County in Minnesota. The real estate has a value of $78,800 property tax valuation and has debt with Security Bank of Minnesota in the amount shown above.

## TERMS OF THE LEASES

11.     Attached as Exhibit "A" is a copy of the Lease which the Debtor proposes to enter related to the subject property with Wayne Christopher ("tenant"). The lease provides tenant make an initial payment for subject property of $3,600 per month as a security deposit. To be held in reserve and used as a credit against final rental payments or be returned if not needed. The lease calls for consideration to be $3,600 per month. The terms of the lease will be for the dates of June 15, 2024 to January 15, 2025, with extension and renewals as provided with the lease agreement during which the Debtor will have time to prepare and confirm an operating Plan of Reorganization or otherwise administer and liquidate the real estate. In the meantime, the facilities would be insured against damage to them by wind, hail, or another casualty. It is estimated the operations should bring in approximately $21,600 for the real estate.

## PRAYER

WHEREFORE, the Debtor prays that the Court enter an Order granting the Debtor authority to enter into the Lease Agreements more fully described above, and that the Court grant such other and further relief as the Court may deem necessary and proper.

 Dated this 12th day of June, 2024.

Respectfully submitted,

FLUEGEL, ANDERSON, MCLAUGHLIN,
& BRUTLAG, CHARTERED

/e/ Carrie E. Backman
Carrie E. Backman
cbackman@fluegellaw.com

*/e/* David C. McLaughlin
David C. McLaughlin
dmclaughlin@fluegellaw.com

Attorneys for Debtor
129 2nd St. NW
Ortonville, MN  56278
(320) 839-2549

VERIFICATION

STATE OF MINNESOTA    )
                                      ) ss.
COUNTY OF _____)

Steven Hargis, Chief Operating Officer of the corporation being first duly sworn upon oath,

states that he is one of the Debtors-in-Possession in the above-entitled proceeding; that he has read

the foregoing Motion for Authority to Lease Land in Martin County, Minnesota

, knows the contents thereof to be true of his knowledge, except as to those matters therein

stated on information and belief, and as to those matters he believes them to be true.

Steven Hargis

Subscribed and sworn to before me
this ___8___ day of June, 2024.

Notary Public

JESSICA GUERRERO
NOTARY PUBLIC
MINNESOTA
My Commission Expires 01/31/2027

EXHIBIT A

# LEASE

THIS LEASE is made and executed on _____, 2024, by and between **Wayne Christopher ("Lessee")**, at _____ Wells, Minnesota, and **Strategic Pork Solutions LLC ("SPS")**, having its principal office at 126 S. Broadway, Wells, County of Martin, State of Minnesota, herein referred to as *"Lessor"*.

### SECTION ONE
### DEMISE, DESCRIPTION, AND USE OF PREMISES

Lessor leases to Lessee those certain premises with the appurtenances, situated in Wells, County of Martin, State of Minnesota, and as more particularly described in the schedule attached hereto as Exhibit A and made a part hereof.  As used herein, the term "premises" refers to the real property above described and to any improvements and equipment located thereon from time to time during the term hereof.

### SECTION TWO
### TERM

The initial term of this lease shall be for six (6) months, commencing on June 15, 2024, and ending on December 15, 2024.  As used herein the expression "term hereof" refers to such initial term and to any renewal thereof as hereinafter provided.

Lessor and Lessee agree that Lessee shall have the option to renew this Lease for an additional 6-month period.  In order to elect to exercise this option to extend, the Lessee must not be in default in any condition of this Lease and must provide written notice not less than 60 days prior to the end of the lease term mentioned above.  In the event of an extension of this Lease, all terms and conditions contained herein shall remain in full force and effect, except the rental payments described in Section Three below shall be adjusted upward to reflect any change in the Consumer

1

EXHIBIT A

Price Index published by the Bureau of Labor Statistics for all urban consumers in the Midwestern

area since the date of this Lease.

**SECTION THREE**
**RENT**

Subject to adjustment as provided below, Lessee shall pay rent in the sum of $3,600.00 per

month.

As and for addition rent, Lessee shall repair and maintain the leased premises as is necessary

for the safe and efficient administration of premises.  Lessee shall be responsible to turn over

premises in the same condition it is in on the date of this Lease on the termination of this Lease and

is responsible to repair or replace any of the equipment and improvements which do not meet this

standard.  Further, the Lessee shall be in default under the terms of this Lease if Lessor gives Lessee

notice to repair or maintain the premises and Lessee fails to make the necessary repairs within 10

days from the date of the notice to repair.

**SECTION FOUR**
**WARRANTIES OF TITLE AND QUIET POSSESSION**

Lessor covenants that Lessor is seized of the demised premises and has full right to make this

lease and that Lessee shall have quiet and peaceable possession of the demised premises during the

term hereof.

**SECTION FIVE**
**DELIVERY OF POSSESSION**

If Lessor, for any reason whatsoever, cannot deliver possession of the demised premises to

Lessee at the commencement of the lease term, as hereinbefore specified, this lease shall not be void

or voidable, nor shall Lessor be liable to Lessee for any loss or damage resulting therefrom and there

shall be no proportionate reduction of rent covering the period between the commencement of the

2

EXHIBIT A

lease term and the time when Lessor can deliver possession.

### SECTION SIX
### USES PROHIBITED

Lessee shall not use, or permit the demised premises, or any part thereof, to be used, for any purpose or purposes other than the purpose or purposes for which the demised premises are hereby leased; and no use shall be made or permitted to be made of the demised premises, or acts done, which will cause a cancellation of any insurance policy covering the building located on the premises, or any part thereof, nor shall Lessee sell, or permit to be kept, used, or sold, in or about the demised premises, any article which may be prohibited by the standard form of fire insurance policies. Lessee shall, at its sole cost, comply with all requirements, pertaining to the demised premises, of any insurance organization or company, necessary for the maintenance of insurance, as herein provided, covering any building and appurtenances at any time located on the demised premises. Further, Lessee shall comply with all regulatory requirements relating to the operation of the business and shall comply with Standards established by the Minnesota Department of Health and by other Governmental bodies.

### SECTION SEVEN
### WASTE AND NUISANCE PROHIBITED

During the term of this lease, Lessee shall comply with all applicable laws affecting the demised premises, the breach of which might result in any penalty on Lessor or forfeiture of Lessor's title to the demised premises. Lessee shall not commit, or suffer to be committed, any waste on the demised premises, or any nuisance.

### SECTION EIGHT
### ABANDONMENT OF PREMISES

Lessee shall not vacate or abandon the premises at any time during the term hereof; if Lessee shall abandon, vacate or surrender the demised premises, or be dispossessed by process of law, or

3

EXHIBIT A

otherwise, any personal property belonging to Lessee and left on the premises shall be deemed to be abandoned, at the option of Lessor, except such property as may be encumbered to Lessor.

**SECTION NINE**
**LESSOR'S RIGHT OF ENTRY**

Lessee shall permit Lessor and the agents and employees of Lessor to enter into and upon the demised premises at all reasonable times for the purpose of inspecting the same, or for the purpose of posting notices of non-responsibility for alterations, additions, or repairs, without any rebate of rent and without any liability to Lessee for any loss of occupation or quiet enjoyment of the premises thereby occasioned.

**SECTION TEN**
**ENCUMBRANCE OF LESSEE'S LEASEHOLD INTEREST**

Lessee may not encumber by mortgage or deed of trust, or other proper instrument, its leasehold interest and estate in the demised premises.

**SECTION ELEVEN**
**SUBLETTING AND ASSIGNMENT**

Lessee shall not assign or transfer this lease, or any interest herein, without the prior written consent of Lessor.  An assignment shall not be deemed to be a consent to any subsequent assignment.

Any such assignment without such consent shall be void, and shall, at the option of Lessor, terminate this lease.  Neither this lease nor the leasehold estate of Lessee nor any interest of Lessee hereunder in the demised premises or any buildings or improvements thereon shall be subject to involuntary assignment, transfer, or sale, or to assignment, transfer, or sale by operation of law in any manner whatsoever, and any such attempted involuntary assignment, transfer, or sale shall be void and of no effect and shall, at the option of Lessor, terminate this lease.

4

EXHIBIT A

### SECTION TWELVE
### NOTICES

All notices, demands, or other writings in this lease provided to be given or made or sent, or which may be given or made or sent, by either party hereto to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail, registered and postage prepaid, and addressed as follows:

| | |
|---|---|
| TO LESSOR: | Strategic Pork Solutions LLC<br>126 S. Broadway<br>Wells, MN  56097 |
| With a Copy to: | David C. McLaughlin<br>Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chtd.<br>129 2nd St. NW<br>Ortonville, MN  56278 |
| TO LESSEE: | Wayne Christopher<br>To be supplied by tenant |

The address to which any notice, demand, or other writing may be given or made or sent to any party as above provided may be changed by written notice given by such party as above provided.

### SECTION THIRTEEN
### TAXES AND ASSESSMENTS

a.    <u>Taxes as additional rental</u>.  As additional rental hereunder, Lessee shall pay and discharge as they become due, promptly and before delinquency, all taxes, assessments, rates, charges, license fees, municipal liens, levies, excises, or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature, or kind, which may levied, assessed, charged, or imposed, or which may become a lien or charge on or against the land hereby demised, or any part thereof, the leasehold of Lessee herein, the premises described herein, any building or buildings, or any other

EXHIBIT A

improvements now or hereafter thereon, or on or against Lessee's estate hereby created which may

be a subject of taxation, or on or against Lessor by reason of its ownership of the fee underlying this

lease, during the entire term hereof, excepting only those taxes hereinafter specifically excepted.

b. <u>Assessments affecting improvements</u>. Specifically and without in any way limiting

the generality of the foregoing, Lessee shall pay all special assessments and levies or charges made

by any municipal or political subdivision for local improvements, and shall pay the same in cash as

they shall fall due and before they shall become delinquent and as required by the act and

proceedings under which any such assessments or levies or charges are made by any municipal or

political subdivision. If the right is given to pay either in one sum or in installments, Lessee may

elect either mode of payment and its election shall be binding on Lessor. If, by making any such

election to pay in installments, any of such installments shall be payable after the termination of this

lease or any extended term thereof, such unpaid installments shall be prorated as of the date of

termination and amounts payable after such date shall be paid.

by Lessor. All of the taxes and charges under Section Thirteen (13) shall be prorated at the

commencement and expiration of the term hereof.

c. <u>Taxes excepted</u>. Anything in this section to the contrary notwithstanding, Lessee shall

not be required to pay any estate, gift, inheritance, succession, franchise, income, or excess profits

taxes which may be payable by Lessor or Lessor's legal representative, successors, or assigns, nor

shall Lessee be required to pay any tax that might become due on account of ownership of property

other than that herein leased which may become a lien on the property herein leased or collectable

out of the same.

d. <u>Contesting taxes</u>. If Lessee shall in good faith desire to contest the validity or amount

of any tax, assessments, levy, or other governmental charge herein agreed to be paid by Lessee,

EXHIBIT A

Lessee shall be permitted to do so, and to defer payment of such tax or charge, the validity or amount

of which Lessee is so contesting, until final determination of the contest, on giving to Lessor written

notice thereof prior to the commencement of any such contest, which shall be at least thirty (30) days

prior to delinquency, and on protecting Lessor on demand by a good and sufficient surety bond

against any such tax, levy, assessment, rate, or governmental charge, and from any costs, liability, or

damage arising out of any such contest.

e.      Disposition of rebates. All rebates on account of any such taxes, rates, levies, charges,

or assessments required to be paid and paid by Lessee under the provisions hereof shall belong to

Lessee, and Lessor will, on the request of Lessee, execute any receipts, assignments, or other

acquittances that may be necessary in the premises in order to secure the recovery of any such

rebates, and will pay over to Lessee any such rebates that may be received by Lessor.

f.      Receipts.  Lessee shall obtain and deliver receipts or duplicate receipts for all taxes,

assessments, and other items required hereunder to be paid by Lessee, promptly on payment thereof.

**SECTION FOURTEEN**
**REPAIRS AND DESTRUCTION OF EQUIPMENT**

a.      Maintenance of improvements.  Lessee shall, throughout the term of this lease, at its

own cost, and without any expense to Lessor, keep and maintain the premises of every kind which

may be a part thereof, in good, sanitary, and neat order, condition and repair, and, except as

specifically provided herein, restore and rehabilitate any equipment of any kind which may be

destroyed or damaged by fire, casualty, or any other cause whatsoever.  Lessor shall not be obligated

to make any repairs, replacements, or renewals of any kind, nature, or description, whatsoever to any

premises or the equipment thereon. Lessee shall also comply with and abide by all federal, state,

county, municipal, and other governmental statutes, ordinances, laws, and regulations affecting the

EXHIBIT A

demised premises, the improvements thereon or any activity or condition on or in such premises.

b.     <u>Damage to and destruction of equipment</u>. The damage, destruction, or partial destruction of any of the premises' equipment which is a part of the premises shall not release Lessee from any obligation hereunder, except as hereinafter expressly provided, and in case of damage to or destruction of any such equipment, Lessee shall at its own expense promptly repair and restore the same to a condition as good or better than that which existed prior to such damage or destruction. Without limiting such obligations of Lessee, it is agreed that the proceeds of any insurance covering such damage or destruction shall be made available to Lessee for such repair or replacement.

c.     <u>Damage or destruction occurring toward end of term</u>.  Anything to the contrary in the immediately preceding paragraphs of this section notwithstanding, in case of destruction of the building on the premises or damage thereto from any cause so as to make it untenantable occurring during the last year of the term hereof, Lessee, if not then in default hereunder, may elect to terminate this lease by written notice served on Lessor within thirty (30) days after the occurrence of such damage or destruction.  In the event of such termination, there shall be no obligation on the part of Lessee to repair or restore the building or improvements nor any right on the part of Lessee to receive any proceeds collected under any insurance policies covering such building or any part thereof.  On such termination, rent, taxes, assessments, and any other sums payable by Lessee to Lessor hereunder shall be prorated as of the termination date, and in the event any rent, taxes, or assessments shall have been paid in advance, Lessor shall rebate the same for the unexpired period for which payment shall have been made.  Lessor shall be entitled to retain the proceeds of all insurance covering the premises.

**SECTION FIFTEEN**
**UTILITIES**

8

# EXHIBIT A

Lessee shall fully and promptly pay for all gas, heat, light, power, telephone service, and other public utilities of every kind (except water) furnished to the premises throughout the term hereof, and all other costs and expenses of every kind whatsoever of or in connection with the use, operation, and maintenance of the premises and all activities conducted thereon and Lessee shall have no responsibility of any kind for any thereof.

## SECTION SIXTEEN
## LIENS

a.    <u>Lessee's duty to keep premises free of liens</u>.  Lessee shall keep all of the premises and every part thereof and all buildings and other improvements at any time located thereon free and clear of any and all mechanics', materialmen's, and other liens for or arising out of or in connection with work or labor done, services performed, or materials or appliances used or furnished for or in connection with any operations of Lessee, any alteration, improvement, or repairs or additions which Lessee may make or permit or cause to be made, or any work or construction, by, for, or permitted by Lessee on or about the premises, or any obligations of any kind incurred by Lessee, and at all times promptly and fully to pay and discharge any and all claims on which any such lien may or could be based, and to indemnify Lessor and all of the premises and all buildings and improvements thereon against all such liens and claims of liens and suits or other proceedings pertaining thereto. Lessee shall give Lessor written notice no less than thirty (30) days in advance of the commencement of any construction, alteration, addition, improvement, or repair estimated to cost in excess of One Thousand and no/100 Dollars ($1,000.00) in order that Lessor may post appropriate notices of Lessor's non-responsibility.

b.    <u>Contesting Liens</u>.  If Lessees desires to contest any such lien, it shall notify Lessor of its intention to do so within seven days after the filing of such lien.  In such case, and provided that

9

EXHIBIT A

Lessee shall on demand protect Lessor by a good and sufficient surety bond against any such lien

and any cost, liability, or damage arising out of such contest, Lessee shall not be in default hereunder

until thirty (30) days after the final determination of the validity thereof, within which time Lessee

shall satisfy and discharge such lien to the extent held valid; but the satisfaction and discharge of any

such lien shall not, in any case, be delayed until execution is had on any judgment rendered thereon,

and such delay shall be a default of Lessee hereunder.  In the event of any such contest, Lessee shall

protect and indemnify Lessor against all loss, expense, and damage resulting therefrom.

## SECTION SEVENTEEN
## INDEMNIFICATION OF LESSOR

Lessor shall not be liable for any loss, injury, death, or damage to persons or property which

at any time may be suffered or sustained by Lessee or by any person whosoever may at anytime be

using or occupying or visiting the demised premises or be in, on, or about the same, whether such

loss, injury, death, or damage shall be caused by or in any way result from or arise out of any act,

omission, or negligence of Lessee or of any occupant, subtenant, visitor, or user of any portion of the

premises, or shall result from or be caused by any other matter or thing whether of the same kind as

or of a different kind than the matters or things above set forth, and Lessee shall indemnify Lessor

against all claims, liability, loss, or damage whatsoever on account of any such loss, injury, death, or

damage.  Lessee hereby waives all claims against Lessor for damages to the building and

improvements that are now on or hereafter placed or built on the premises and to the property of

Lessee in, on, or about the premises, and for injuries to persons or property in or about the premises,

from any cause arising at any time.  The two preceding sentences shall not apply to loss, injury,

death, or damage arising by reason of the negligence or misconduct of Lessor, or employees.

## SECTION EIGHTEEN
## ATTORNEYS' FEES

10

# EXHIBIT A

If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of, or to enforce or interpret any of the covenants, terms, or conditions of this lease, or for the recovery of the possession of the demised premises, the prevailing party shall be entitled to recover from the other party as part of the prevailing party's

costs reasonable attorneys' fee, the amount of which shall be fixed by the court and shall be made a part of any judgment or decree rendered.

## SECTION NINETEEN
## REDELIVERY OF PREMISES

Lessee shall pay the rent and all other sums required to be paid by Lessee hereunder in the amounts, at the times, and in the manner herein provide, and shall keep and perform all the terms and conditions hereof on its part to be kept and performed, and, at the expiration or sooner termination of this lease, peaceably and quietly quit and surrender to Lessor the premises in good order and condition subject to the other provisions of this lease.  In the event of the non-performance by Lessee of any of the covenants of Lessee undertaken herein, this lease may be terminated as herein provided.

## SECTION TWENTY-ONE
## PROHIBITION OF INVOLUNTARY ASSIGNMENT; EFFECT OF
## BANKRUPTCY OR INSOLVENCY

a.    <u>Prohibition of insolvency assignment</u>.  Neither this lease nor the leasehold estate of Lessee nor any interest of Lessee hereunder in the demised premises or in the building or improvements thereon shall be subject to involuntary assignment, transfer, or sale, or to assignment, transfer, or sale by operation of law in any manner whatsoever (except through statutory merger or consolidation, or devise, or intestate succession) and any such attempt at involuntary assignment, transfer, or sale shall be void and of no effect.

11

EXHIBIT A

b.    <u>Effect of bankruptcy</u>.  Without limiting the generality of the provisions of the preceding Paragraph (a) of this section, Lessee agrees that in the event any proceedings under the Bankruptcy Act or any amendment thereto be commenced by or against Lessee, and, if against Lessee, such proceedings shall not be dismissed before either an adjudication in bankruptcy or the confirmation of a composition, arrangement, or plan or reorganization, or in the event Lessee is adjudged insolvent or makes an assignment for the benefit of its creditors, or if a receiver is appointed in any proceeding or action to which Lessee is a party, with authority to take possession or control of the demised premises or the business conducted thereon by Lessee, and such receiver is not discharged within a period of ten (10) days after his appointment, any such event or any involuntary assignment prohibited by the provisions of the preceding Paragraph (a) of this section shall be deemed to constitute a breach of this lease by Lessee and shall, at the election of Lessor, but not otherwise, without notice or entry or other action of Lessor terminate this lease and also all rights of Lessee under this lease and in and to the demised premises and also all rights of any and all persons claiming under Lessee.

**SECTION TWENTY-TWO**
**NOTICE OF DEFAULT**

Except as to the provisions of Sections Eleven and Twenty-Six hereof, Lessee shall not be deemed to be in default hereunder in the payment of rent or the payment of any other moneys as herein required or in the furnishing of any bond or insurance policy when required herein unless Lessor shall first give to Lessee ten (10) days' written notice of such default and Lessee fails to cure such default within such ten (10) days.

Except as to the provisions or events referred to in the preceding sentence of this section 25, Lessee shall not be deemed to be in default hereunder unless Lessor shall first give to Lessee ten (10)

12

EXHIBIT A

days' written notice of such default, and Lessee fails to cure such default within such ten-day period,

or, if the default is of such a nature that it cannot be cured within ten (10) days,

Lessee fails to commence to cure such default within such period of ten (10) days or fails thereafter

to proceed to the curing of such default with all possible diligence.

**SECTION TWENTY-THREE**
**DEFAULT**

In the event of any breach of this lease by Lessee, Lessor, in addition to the other rights or remedies it may have, shall have the immediate right of re-entry and may remove all persons and property from the premises; such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Lessee.  Should Lessor elect to re-enter, as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Lessor may either terminate this lease or it may from time to time, without terminating this lease, re-let the demised premises or any part thereof for such term or terms (which may be for a term extending beyond the term of this lease) and at such rental or rentals and on such other terms and conditions as Lessor in the sole discretion of Lessor may deem advisable with the right to make alterations and repairs to the demised premises.  On each such re-letting, Lessee shall be immediately liable to pay to Lessor, in addition to any indebtedness other than rent due hereunder, the expenses of such re-letting and of such alterations and repairs, incurred by Lessor.

In the event that Lessee by failing or neglecting to do or perform any act or thing herein provided by it to be done or performed such act or thing (entering on the demised premises for such purposes, if Lessor shall so elect), and Lessor shall not be or be held liable or in any way responsible for any loss, inconvenience, annoyance, or damage resulting to Lessee on account thereof, and Lessee shall repay to Lessor on demand the entire expense thereof, including compensation to the

13

EXHIBIT A

agents and employees of Lessor.  Any act or thing done by Lessor pursuant to the provisions of this

section shall not be or be construed as a waiver of any such default by Lessee, or as a waiver of any

covenant, term, or condition herein contained or the performance thereof, or of any other right or

remedy of Lessor, hereunder or otherwise.  All amounts payable by Lessee to Lessor under any of

the provisions of this lease, if not paid when the same become due as in this lease provided, shall

bear interest from the date they become due until paid at the rate of ten percent (10%) per annum,

compounded annually.

**SECTION TWENTY-FOUR**
**EFFECT OF EMINENT DOMAIN**

a.    <u>Effect of total condemnation</u>.  In the event the entire demised premises shall be

appropriated or taken under the power of eminent domain by any public or quasi-public authority,

this lease shall terminate and expire as of the date of such taking, and Lessee shall thereupon be

released from any liability thereafter accruing hereunder.

b.    <u>Effect of partial condemnation</u>.  In the event a portion of the demised premises shall

be so appropriated or taken and the remainder of the property shall not be suitable for the use then

being made of the property by Lessee, or if the remainder of the  premises is not one undivided

parcel of property, Lessee shall have the right to terminate this lease as of the date of such taking on

giving to Lessor written notice of such termination within ten (10) days after Lessor has notified

Lessee in writing that the property has been so appropriated or taken.

c.    <u>Condemnation award</u>.  In the event of the termination of this lease by reason of the

total or partial taking of the premises by eminent domain, then in any such condemnation

proceedings Lessor and Lessee shall be free to make claim against the condemning or taking

authority for the amount any damage done to them, respectively, as a result thereof.

14

EXHIBIT A

## SECTION TWENTY-FIVE
## SURRENDER OF LEASE

The voluntary or other surrender of this lease by Lessee, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Lessor, terminate all or any existing subleases or subtenancies, or may, at the option of Lessor, operate as an assignment to it of any or all such subleases or subtenancies.

## SECTION TWENTY-SIX
## TRANSFER OF SECURITY

If any security is given by Lessee to secure the faithful performance of all or any of the covenants of this lease on the part of Lessee, Lessor may transfer or deliver the security, as such, to the purchaser of the reversion, in the event that the reversion be sold, and thereupon Lessor shall be discharged from any further liability in reference thereto.

## SECTION TWENTY-SEVEN
## WAIVER

The waiver by Lessor of, or the failure of Lessor to take action with respect to any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of such term, covenant, or condition, or subsequent breach of the same, or any other term, covenant, or condition therein contained. The subsequent acceptance of rent hereunder by Lessor shall not be deemed to be a waiver of any preceding breach by Lessee of any term, covenant, or condition of this lease, other than the failure of Lessee to pay the particular rental so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.

## SECTION TWENTY-EIGHT
## EFFECT OF LESSEE'S HOLDING OVER

Any holding over after the expiration of the term of this lease, with consent of Lessor, shall be construed to be a tenancy from month to month, at the same monthly rental as required to be paid

EXHIBIT A

by Lessee for the period immediately prior to the expiration of the term hereof, and shall otherwise

be on the terms and conditions herein specified, so far as applicable.

### SECTION TWENTY-NINE
### PARTIES BOUND

The covenants and conditions herein contained shall, subject to the provisions as to

assignment, transfer, and subletting, apply to and bind the heirs, successors, executors,

administrators, and assigns of all of the parties hereto; and all of the parties hereto shall be jointly

and severally liable hereunder.

### SECTION THIRTY
### TIME OF THE ESSENCE

Time is of the essence of this lease, and of each and every covenant, term, condition, and

provision hereof.

### SECTION THIRTY-ONE
### SECTION CAPTIONS

The captions appearing under the section number designations of this lease are for

convenience only and are not a part of this lease and do not in any way limit or amplify the terms

and provisions of this lease.

IN WITNESS WHEREOF, the parties have executed this lease on the day and year first

written.

LESSEE:
WAYNE CHRISTOPHER

By_____
Its_____

LESSOR:
STRATEGIC PORK SOLUTIONS LLC

EXHIBIT A

By: _____

Its: _____

# EXHIBIT A

STATE OF MINNESOTA        )
                                 ) ss

COUNTY OF _____)

On this ___ day of _____, 2024, before me appeared _____, to me personally known, who, being by me duly sworn, did say that he is respectively the _____ of Strategic Pork Solutions LLC., and that said instrument was executed on behalf of said corporation by authority of its Board of Directors; and that said he acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public

STATE OF MINNESOTA        )
                                 ) ss.

COUNTY OF _____)

On this ___ day of _____, 2024, before me appeared _____, to me personally known, who, being by me duly sworn, did say that he is respectively the _____ of City of Wells, and that said instrument was executed on behalf of said political subdivision by authority of its City Council; and that said _____ acknowledged said instrument to be the free act and deed of said political subdivision.

_____
Notary Public

Instrument drafted by:
**Fluegel, Anderson, McLaughlin,**
**& Brutlag, Chartered**
Attorneys at Law
Box 180, Elbow Lake, MN 56531-0180; (218) 685-5400
Box 527, Morris, MN 56267-0527; (320) 589-4151
129 2nd St. NW, Ortonville, MN 56278; (320) 839-2549

18

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY #24-31355 |
| | Chapter 11 |
| Strategic Pork Solutions LLC, | |
| Debtor. | |

### UNSWORN DECLARATION FOR PROOF OF SERVICE

The undersigned, being an employee of Fluegel, Anderson, McLaughlin & Brutlag, Chartered declares that on the date indicated below, I served true and correct copies of the following:

- DEBTOR-IN-POSSESSION'S MOTION FOR AUTHORITY TO LEASE LAND IN MARTIN COUNTY
- PROPOSED ORDER

upon the entities named below by first class mail postage prepaid and by first class mail postage prepaid to a domestic or foreign corporation or upon a partnership or other unincorporated association to the attention of a managing agent, or by certified mail prepaid to an insured depository institution addressed to an officer of the institution and to any entities who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System:

| | |
|---|---|
| Internal Revenue Service | Internal Revenue Service |
| Wells Fargo Place | Centralized Insolvency Operations Unit |
| 30 E 7th St | PO Box 7346 |
| Mail Stop 5700 | Philadelphia, PA 19101 |
| St. Paul, MN 55101 | |

AND ALL CREDITORS ON ATTACHED MATRIX.

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: June 12, 2024                                    /e/ Chelsie A. Gere

Label Matrix for local noticing
0864-3
Case 24-31355
District of Minnesota
St Paul
Wed May 29 14:00:36 CDT 2024

Strategic Pork Solutions, LLC
126 South Broadway
Wells, MN 56097-1628

St Paul
200 Warren E. Burger Federal Building
and U.S. Courthouse
316 N Robert St
St Paul, MN 55101-1495

ACP, LLC
1750 W 23rd Street
Fremont NE 68025-6607

Advanced Livestock
PO Box 294
Fulda MN 56131-0294

Agrisompo of North America
7101 82nd Street
Lubbock TX 79424-4703

Agvet Supply, PLLC
203 Commerce Drive
Webster City IA 50595-2304

Blue Cross Blue Shield
PO Box 860448
Minneapolis MN 55486-0448

Brooke S. Jacobs
6701 Westown Parkway, Suite 10
Brick Gentry, P.C.
West Des Moines IA 50266-7703

Central Farm Service
233 W. Ciro Street
Truman MN 56088-2018

Christina Hargis
126 S. Broadway
Wells MN 56097-1628

County Line Pork, LLC
1350 W Prairie Drive
Sycamore IL 60178-3166

Doug Becker
SPS Grower
150th Street
Easton MN 56025

Foley & Mansfield
250 Marquette Ave
Ste 1200
Minneapolis MN 55401-1874

Hawkins Inc
PO Box 860263
Minneapolis MN 55486-0263

Innovative Agricultural Soluti
1416 Panoramic Court
Ames IA 50010-4188

Joe Druffel
12742 590th Avenue
Wells MN 56097-4715

KH Trucking
744 12th Avenue NE
Hampton IA 50441-1120

Lager's of Mankato
307 Raintree Road
Mankato MN 56001-4817

Larry Mohrinkel
42631 750th Ave.
Saint James MN 56081-4559

Maschka, Reidy, Ries & Andrews
151 St. Andrews Court
Building 1010
Mankato MN 56001-8818

Minnesota Enery Resources
PO Box 6040
Carol Stream IL 60197-6040

Pig Express Inc.
40 52nd Way Northeast
Fridley MN 55421-1014

Pro-Cooperative
PO Box 189
Pocahontas IA 50574-0189

Security Bank Minnesota
437 Bridge Ave.
Albert Lea MN 56007-2954

Small Business Administration
409 3rd St., SW
Washington DC 20416-0002

Steven Hargis
126 S. Broadway
Wells MN 56097-1628

US Trustee
1015 US Courthouse
300 S 4th St
Minneapolis, MN 55415-3070

Verterinary Pharmaceutic
2008 North Sunrise Drive
Saint Peter MN 56082-5384

Warren Johnson
125th St. 57580 125th St.
Wells MN 56097

David C. McLaughlin
Fluegel Anderson McLaughlin & Brutlag
129 2nd St NW
Ortonville, MN 56278-1408

Mary Sieling
150 South Fifth Street
Suite 3125
Minneapolis, MN 55402-4221

End of Label Matrix
Mailable recipients    31
Bypassed recipients     0
Total                  31

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

Bankruptcy No. 24-31355

Strategic Pork Solutions LLC,

Debtor.

---

**ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO LEASE FACILITIES**

On the 17th day of July 2024, came on for consideration the Debtor's Motion for

Authority to Lease Facilities (the "Motion") filed by the Debtor, and the Court having considered

the Motion and determined that adequate notice and opportunity for hearing under the

circumstances has been given to creditors and parties in interest in the bankruptcy case, and the

court having been advised that no objections have been fled to such Motion, and the court having

considered the presentation of the evidence and the argument of counsel and having determined

that good cause exists for the granting of the relief sought in such Motion and that the leasing of

the facilities under the conditions and circumstances more fully described herein is in the best

interest of the Debtor's estate and should be GRANTED  enters the following findings and

orders:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Debtor,

Strategic Pork Solutions, Inc. is hereby authorized to lease its Martin County facilities located

Minnesota for a period of nine (9) months beginning July 15, 2024 through April 15, 2025 to

Wayne Christopher, to allow these facilities to be operated and generate funds to be used as

authorized by future Court orders.

Dated:

_____
Katherine A. Constantine
Judge of Bankruptcy Court